UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| KENNETH S. TAYLOR, | ) | CASE NO. 1:09 CV 730 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CAVALIERS OPERATING | ) | AND ORDER |
| COMPANY, LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 31, 2009, pro se plaintiff Kenneth S. Taylor filed the above-captioned action under 42 U.S.C. §§ 1981, 1983, 1985, 1988, and 1991, and 18 U.S.C. § 242 against the Cavalier Operating Company, LLC, Captain Bryant Heffernan, the City of Cleveland, the Cleveland Police, John Doe Cleveland Police Officers, Quicken Loans Arena, Michael Sims, Gary Gingell, Larry Russell, Robert Petchler, Michael Jaykma, David Eckstein, Daniel Gilbert, the Cleveland Cavaliers, and Tennables Protective Services, Inc. He also includes a claim arising under Ohio law. In the complaint, plaintiff alleges he has been cited unfairly for violating the Cleveland City Ordinance regulating ticket brokers. He seeks monetary damages. Mr. Taylor also filed an Application to Proceed In Forma Pauperis. That Application is granted.

## Background

Mr. Taylor contends he is a ticket broker operating on the streets of the City of Cleveland. The City has an ordinance, Chapter 698, which governs the activities of ticket brokers. On several occasions in 2007 and 2008, Mr. Taylor was questioned by police officers who asserted that he was violating the ordinance. Mr. Taylor denies any wrongdoing and contends that the officers' actions violate his rights under the First and Fourteenth Amendments.

Mr. Taylor contends he was approached by Officer Jaykma on June 22, 2007. The officer accused Mr. Taylor of selling tickets for an amount in excess of their face value, which is a violation of the ordinance, and confiscated his remaining tickets. Mr. Taylor filed a complaint against the Officer with the Office of Professional Standards. He claims the Civilian Police Review Board recommended that the officer be disciplined.

Mr. Taylor encountered Officer Robert Petchler on October 31, 2007 in front of Quicken Loans Arena. The officer told Mr. Taylor and others standing in front of the sports complex to leave the premises. Mr. Taylor filed a complaint against this officer as well; however, there is no indication that any action was taken against him.

The City of Cleveland revised its local ordinance on July 23, 2008 in response to "the activities of vendors of tickets of admission to sporting events and other events in and near the Central Business District ... [which have] caused inconvenience and annoyance to persons on their way to the events or patronizing restaurants and other businesses in the vicinity of the events." CITY OF CLEVELAND CODIFIED ORDINANCES § 698A.01 (a). City Council noted that "[a]t times, pedestrians encounter a gauntlet of ticket vendors employing aggressive sales tactics, or witness sidewalk turf disputes among ticket vendors that sometimes escalate to physical altercations." Id.

This emergency ordinance restricts the activities of all ticket brokers operating near the Progressive Field and the Quicken Loans Arena to designated areas. Pursuant to that ordinance, a ticket vendor must first be warned by an officer that his activities are in violation of the ordinance. If the vendor persists, he may be subject to criminal action.

Mr. Taylor was engaged in the sale of tickets on Prospect Avenue and East 9th Street on July 25, 2008. He was approached by two plain clothes officers who warned him that he was in violation of the new ordinance. His name and social security number were recorded by the officers as proof of the warning. He contends they also accused him of violating other parts of the ordinance, which he denies. He asserts he was targeted because he is African American and because he is a known ticket broker.

With knowledge of this ordinance, Mr. Taylor was standing directly across from Quicken Loans Arena on October 16, 2008. Two officers, who he notes were African American and Caucasian, engaged him in conversation and stated that he was selling tickets outside of the permissive sales zone in violation of the ordinance. Mr. Taylor does not clearly indicate whether these individuals were Cleveland Police Officers or private security officers. Mr. Taylor denies he was displaying tickets, and claims he had not sold or purchased a ticket from anyone that day. The officers asked him to show them the tickets he had in his possession. He was told that if he did not produce the tickets, they would pat him down. They also did a search of the list of vendors who had been warned of the new ordinance. He was informed that if the officer located tickets and his name was on the list, he would be given a citation.

At some point, Mr. Taylor reached into his pocket and produced 8 tickets in the 4th row for the circus, and 12 tickets for a hockey game. After seeing the tickets, the officers told Mr.

Taylor that if he wanted the tickets back, he would have to come into Quicken Loans Arena and speak with Michael Sims, the Chief Security Officer for the facility. He claims the circus tickets were for his private use. When he inquired about the reason they would not return the tickets, he was told the tickets he had in his possessions were complimentary tickets provided to employees which cannot be sold or purchased. He was taken inside the Arena. At that time, Mr. Taylor produced additional tickets. All of the tickets in his possession were confiscated and examined by a supervisor. Only those tickets with prices on them were given back to Mr. Taylor. The complimentary circus tickets and the hockey tickets were not returned. He was told Mr. Sims would decide if the tickets would be replaced. He was asked to reveal the name of the person who gave him the complimentary tickets.

Mr. Sims telephoned Mr. Taylor at a later date and informed him that circus tickets would be available at the box office for him. He claims that when he went to claim his tickets, he discovered they were for a different date, and were not the desirable 4th row center seats offered by the original tickets. He claims he was treated this way because he is an African American.

Two weeks later, on October 29, 2008, Mr. Taylor claims he was waiting to attend a free rally for Barrack Obama's campaign when he was approached by officers. He indicates they accused him of trying to buy or sell tickets. He claims that while they were talking to Mr. Taylor, "a white gentleman approach [sic] the officers while we were standing there and ask them could he buy some tickets from them." (Compl. at 26.) He indicates that the officers did not warn the gentleman that "asking to buy tickets was illegal." (Compl. at 26.) He claims Captain Heffernan informed him that "they don't count...[because] we have not warned him." (Compl. at 27.)

Several days later, Mr. Taylor was in the designated vendors area on Huron Road.

He claims Mr. Sims came up to him and told him to "tell your friends to stay away from my building." (Compl. at 27.) The two engaged in a heated verbal exchange. Later in the evening, Mr. Taylor was given a citation for "annoying people and selling outside the zone." (Compl. at 27.) The charges were subsequently dismissed.

Once again, Mr. Taylor was stopped by Tennable Security Officer David Eckstein on December 5, 2008. He claims Mr. Eckstein pushed him and "horse collar[ed] him around the shoulder arm area" and threw him in the back of the Tennable Security car. He states only that the officer "accus[ed] him of a crime he did not commit... ." (Compl. at 8.) He indicates Mr. Eckstein used foul language, refused to reveal his name or his badge number and referred to himself as Adolph Hitler. Mr. Taylor claims the conversation contained racially offensive material. He indicates Mr. Eckstein took the tickets in Mr. Taylor's possession and told him the next time he was found selling tickets downtown, he would be arrested.

Mr. Taylor includes multiple causes of action. Much of his complaint is comprised of legal rhetoric, making it difficult to decipher all of the claims he intends to assert. The first cause of action he identifies asserts a violation of the First Amendment and contains two parts. In the first part, he claims City Ordinance 961-08 restricts commercial speech and is therefore unconstitutional. He contends that on July 25, 2009, he was physically stopped and was not permitted to sell tickets to a sporting event at any price on the main thoroughfare of the Gateway complex. He claims he was engaged in protected commercial speech and the Ordinance therefore violates his right to free speech. The second part of that cause of action asserts that the City of Cleveland and the Cleveland Police through its officers have enforced this unconstitutional statute and have violated his First Amendment right to free speech.

5

In his second cause of action, Mr. Taylor claims he was denied equal protection of the law. This claim is divided into three parts. First he claims the Ordinance restricts sales in the Gateway complex while not imposing similar restrictions outside of the Cleveland Browns Stadium. He indicates there is no rational basis for distinguishing between vendors at different venues. The second part asserts that the ordinance restricts ticket vendors within a specified area but does not bar box office sales within the restricted area. He also contends that street vendors are limited in the times they may sell tickets whereas box office sales may take place outside of this time frame. He states there is no rational basis for permitting the box office at Progressive Field or Quicken Loans Arena to sell tickets at times and in a location where street vendors are prohibited. Finally, in the third part, he claims these restrictions have a disparate effect on African Americans. Mr. Taylor claims that African American males comprise 90% of the street ticket vendors. He contends police do not stop Caucasian females for selling tickets as often as they stop African American males for the same offense. He also notes that Caucasian merchants are permitted to offer goods within the restricted area. He claims these merchants also offer ticket sales. He contends the City of Cleveland and its officers have violated his right to equal protection.

Mr. Taylor's third and fourth causes of action are based on 18 U.S.C. § 242, and 42 U.S.C. § 1981, respectively. He contends that through "enforcement, application, implementation, and enactment of its new Emergency Ordinance the ordinance was enacted to target Blacks and did disproportionately affect blacks only the city knew or should have known the law would only affect black males." (Compl. at 39.) He also claims Cleveland Police Officers stop African Americans more often than Caucasians for selling tickets outside of the permissible area.

Mr. Taylor's sixth cause of action challenges the ordinance as a violation of the Due

Process Clause. He contends that the ordinance governs outdoor ticket sales. He notes that street ticket vendors are categorized as "outdoor vendors" and subject to the restrictions imposed by the statute, whereas the box office vendors at the sporting venues are not. He argues that patrons who purchase tickets from a box office do not get to enter a facility to complete the transaction. He claims there is no rational basis for the distinction between street vendors and box office vendors. In addition, he states street vendors are limited to selling tickets to 6 hours before the start of an event. Mr. Taylor assets this provision is vague because each event has a different start time. He notes that there may be days when a baseball game begins at noon and a football game begins at 4:00 p.m. He asserts there is no clear definition on how the ordinance will be interpreted under those circumstances. He also contends the law is overbroad and likely to snare innocent people engaged in "nightwalking, buying tickets, giving tourists directions, [and] displaying tickets in a lanyard..[and] people watching in and around sporting events." (Compl. at yy.) He also claims the boundary lines are hard to understand leaving the interpretation to the officer on the scene.

    In his seventh cause of action, Mr. Taylor asserts that "Commander Gary Gingell and other Cleveland police Officers did conspired [sic] with Michael Sims of Quicken Loans Arena, Cleveland Cavaliers, Cavaliers Operating Company, LLC." (Compl. at ddd.) He claims Michael Sims "took tickets from Cavalier stock of tickets and furnished them to Mr. Taylor for resale himself but remains employed." (Compl. at ddd.) He then contends that "employee Cynthia Walker was terminated for her allege [sic] involvement with Mr. Taylor both employees guilty of the same conduct." (Compl. at ddd.) He claims his picture is posted in various ticket windows and he has been banned from the property "based on one sided account [sic] of corrupt police officers and their employee Michael Sims." (Compl. at ddd.) He states without explanation that Mr. Sims

7

prearranged a plan to get him and "thus police acted on [a] preexisting set of circumstances without time to do a [sic] independent investigation, and attorney Jason S. Hillman did slander Mr. Taylor by a letter hand delivered ...by Commander Gary Gingell that threatens to arrest Taylor for trespassing, and prevents him from attending events to which he has tickets...and placing photographs of Mr. Taylor at various windows in public view..." (Compl. at eee).

For his eighth cause of action, Mr. Taylor claims his Fourth Amendment rights were violated. He claims Officer Gingell, Officer Heffernan, Michael Sims, Dave Eckstein, Officer Jaykma and John Doe officers detained him, and confiscated his tickets without his consent. He claims this constitutes an unreasonable search and seizure under the Fourth Amendment.

The ninth cause of action contains a claim of respondeat superior. Mr. Taylor contends that the City of Cleveland failed to properly train its officers which resulted in his being "horse collared" and being subjected to "psychological terror, hate speech, and incessant and constant harassment which is ongoing and chronic... ."

Finally, Mr. Taylor's fifth cause of action asserts claims arising under Ohio law. He asserts the defendants violated Ohio Revised Code § 4112.02. He cites the statute and concludes that this "statute also provides for the granting of compensatory and punitive damages for its violation." (Compl. at ss.)

Mr. Taylor includes a tenth cause of action; however, it merely reflects a request for damages under 42 U.S.C. § 1983 for nonphysical injuries. It does not set forth another claim.

### Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).

### I. 42 U.S.C. § 1983

Mr. Taylor's first, second, sixth, eighth, and ninth causes of action arise, if at all, under 42 U.S.C. § 1983. To establish a prima facie case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981). Several of Mr. Taylor's claims fail to satisfy this criteria and must be dismissed.

As an initial matter, many of the defendants are not "state actors." Generally to be considered to have acted "under color of state law," the defendant must be a state or local government, government official or government employee. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. Jackson v. Metropolitan Edison Co., 419 U.S.

---

[1] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

345, 352 (1974). The Cavaliers Operating Co., Quicken Loans Arena, Daniel Gilbert, Michael Sims and the Cleveland Cavaliers are private parties, not government officials or entities. There are no allegations in the complaint that reasonably suggest that these individuals engaged in state action. Consequently, they are not subject to suit under § 1983.

Mr. Taylor also names the Cleveland Police Department as a defendant. Police Departments are not <u>sui juris</u> and therefore cannot sue or be sued. See <u>Nieves v. City of Cleveland</u>, 153 Fed. Appx. 349, 2005 WL 2033328 (6th Cir. Aug. 24, 2005); <u>Jones v. Ptl. D. Marcum</u>, No. C-3-00-335, 2002 WL 786572 (S.D. Ohio Mar. 11, 2002); <u>Williams v. Dayton Police Dept.</u>, 680 F. Supp. 1075 (S.D. Ohio 1987). See also <u>Messer v. Rohrer</u>, No. C-3-95-270, 1997 WL 1764771, n. 9 (S.D. Ohio Mar. 31, 1997). They are merely sub-units of the municipalities they serve. <u>Id.</u> The claims against the Cleveland Police Department are therefore construed as asserted against the City of Cleveland.

In addition, Mr. Taylor does not specify whether he is bringing suit against the officers in their official or individual capacities. An official capacity damages action against a state or municipal officer is the equivalent of a damages liability litigation targeted against the public entity. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989). Consequently, any claims Mr. Taylor may be asserting against Captain Bryant Heffernan, John Doe Cleveland Police Officers, Gary Gingell, Larry Russell, Robert Petchler, Michael Jaykma, and David Eckstein are redundant, because they are subsumed by his § 1983 charges against the City of Cleveland. <u>Id.</u>; <u>Von Herbert v. City of St. Clair Shores</u>, No. 02-1063, 2003 WL 1194304, *6 (6th Cir. March 11, 2003)

To state a claim against any particular defendant, Mr. Taylor must demonstrate that the defendant actually took part in the violation of his rights. Plaintiff cannot establish the liability

10

of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. Rizzo v. Goode, 423 U.S. 362, 371 (1976); Mullins v. Hainesworth, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Mr. Taylor states only that Officer Russell detained him 30 minutes while he issued a citation. He also states he was compelled to attend two court hearings. Similarly, he indicates only that Officer Gingell personally served him with a document drafted by an attorney. There are no other allegations against either of these defendants and no reasonable suggestion that they were in any way connected to the incidents which give rise to the claims asserted by the plaintiff. They are dismissed from this action.

Mr. Taylor seeks to hold several defendant's liable because they employ other individuals who are were arguably involved in the conduct alleged in the complaint. Respondeat superior is not a proper basis for liability under § 1983. Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir.2003); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984). The liability of supervisors cannot be based solely on the right to control employees, Bellamy, 729 F.2d at 421, or "simple awareness of employees' misconduct," Leary, 349 F.3d at 903; Bellamy, 729 F.2d at 421. Furthermore, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999) (quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982)). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Id. (quoting Hays, 668 F.2d at 874). It is apparent that the Cavalier Operating Company, LLC, Quicken Loans Arena, Daniel Gilbert, the

11

Cleveland Cavaliers, and Tennables Protective Services, Inc. are included in this action simply because they employ other individuals who Mr. Taylor claims violated his constitutional rights. The claims against them are dismissed.

A. First Amendment

Mr. Taylor's First Amendment claim is divided into two parts. The first part is a challenge to the Ordinance itself and is asserted against the City of Cleveland. In the second part of his claim, he cites the July 25, 2008 incident in which two John Doe officers approached him and gave him an official warning for selling tickets outside of the designated area. He claims that they followed the ordinance and kept him from selling his tickets on the main thoroughfare thereby interfering with his commercial speech. Based on this statement, the court construes a claim against the John Doe Officers. By extrapolation, the court can also liberally construe a claim against Officer Eckstein and Officer Heffernan under the same theory.

The court notes that the incidents concerning Officer Petchler and Officer Jaykma occurred prior to the enactment of the Ordinance. Mr. Taylor contends that Officer Petchler asked him and other vendors to leave the premises of Quicken Loans Arena. He does not allege that the Officer prohibited him from selling tickets on the main thoroughfare, but simply restricted his activities on arena property. He claims Officer Jaykma cited him for selling tickets above the face value of the ticket, which is prohibited by a different Cleveland City Ordinance. Neither of these incidents appear to be associated with Plaintiff's First Amendment claim concerning the application of the emergency ordinance, prohibiting Mr. Taylor from selling tickets near the Gateway Complex except in small designated areas. This claim will proceed solely against the City of Cleveland, John Doe Officers, Officer Eckstein, and Officer Heffernan.

B. Equal Protection

Mr. Taylor's Equal Protection claim is divided into three parts. All of these are a challenge to the Ordinance itself. First he claims the Ordinance restricts sales in the Gateway complex while not imposing similar restriction outside of the Cleveland Browns Stadium. The second part of the claim asserts that the ordinance restricts street ticket vendors but does not restrict box office sales within the restricted area. He also contends that street vendors are limited in the times they may sell tickets whereas box office sales may take place outside of this time. Finally, in the third part, he claims these restrictions have a disparate effect on African Americans. In this third section, Mr. Taylor once again mentions his written warning on July 25, 2008 and indicates that Caucasian vendors did not receive similar warnings. This claim shall proceed solely against the City of Cleveland and the John Doe officers.

C. Due Process

Mr. Taylor challenges the Emergency Ordinance as vague, overbroad, and not rationally related to a legitimate state interest. Because this claim focuses solely on the constitutionality of the legislation, the claim will proceed only against the City of Cleveland.

D. Fourth Amendment

The last claim that falls within the parameters of 42 U.S.C. § 1983 is Mr. Taylor's claim that he was searched and detained in violation of the Fourth Amendment. This claim is asserted against Officer Gingell, Captain Heffernan, Mr. Sims, Officer Eckstein, and John Doe Officers. Because the claims against Officer Gingell and Mr. Sims have previously been dismised, this claim shall proceed solely against Captain Heffernan, Officer Eckstein, and the John Doe officers.

## II. 18 U.S.C. §242

In addition to claims asserted under 42 U.S.C. § 1983, Mr. Taylor asserts a cause of action under 18 U.S.C. § 242. This is a criminal statute. It provides no private right of action. U.S. v. Oguaju, No. 02-2485, 2003 WL 21580657, *2 (6th Cir. July 9, 2003); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.1994). The claims asserted under this statute are therefore dismissed.

## III. 42 U.S.C. § 1981

In his next cause of action, Mr. Taylor asserts a claim under 42 U.S.C. § 1981 against the City of Cleveland and John Doe Officers. To establish a claim under that statute, plaintiff must allege: (1) he is a member of a racial minority, (2) the defendants intended to discriminate against him on the basis of his race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. Johnson v. Harrell, No. 97-5257, 1998 WL 57356 (6th Cir. Feb. 2, 1998); Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996). Mr. Taylor contends that on July 25, 2008, John Doe officers approached him and required him to move from the main thoroughfare near the Gateway complex while permitting Caucasian ticket sellers to remain in the area. He further contends that the Ordinance restricting ticket sellers to designated areas was intended to discriminate against African American ticket sellers. This claim will proceed only against the City of Cleveland and the John Doe officers.

## IV. Ohio Revised Code § 4112.02

Mr. Taylor includes a claim for relief under Ohio Revised Code § 4112.02. This statute concerns discrimination in employment and housing. None of the defendants named in this complaint employs Mr. Taylor and he is not seeking a job with the City of Cleveland, the Cleveland

14

Cavaliers, or Quicken Loans Areana. He provides no reasonable indication that the statute is applicable to this case. His claims under this cause of action are dismissed.

## V. 42 U.S.C. § 1985

Finally, Mr. Taylor claims the defendants conspired together to violate his civil rights. To state a claim for conspiracy to deprive a person of equal protection under the law pursuant to 42 U.S.C. § 1985, a plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. Vakilian v. Shaw, 335 F.3d 509, 518 (6th Cir.2003). The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination." Id. A plaintiff fails to state an adequate claim if his allegations are premised upon mere conclusions and opinions. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). He must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. McDowell v. Jones, 990 F.2d 433, 434 (8th Cir.1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

Mr. Taylor failed to properly allege a conspiracy claim pursuant to § 1985. He provides only conclusory allegations that the defendants acted in concert and has failed to present evidence showing an agreement between two or more persons existed to discriminate against African-Americans. The conspiracy to which he alludes appears to involve tickets in his possession which were not available to the public for sale. He alleges facts which suggest that they may have

been complimentary tickets issued to employees of Quicken Loans Arena. He states that two employees lost their jobs as a result of this incident. There are no allegations which reasonably suggest any of the defendants conspired together to deprive Mr. Taylor of equal protection of the law.

## Conclusion

Accordingly, Mr. Taylor's Application to Proceed In Forma Pauperis is granted. His claims against the Cavaliers Operating Co., Quicken Loans Arena, Daniel Gilbert, Michael Sims, the Cleveland Cavaliers, the Cleveland Police Department, Officer Russell, Officer Gingell, and Tennables Protective Services, Inc. are dismissed. Plaintiff's First Amendment claim is dismissed against all defendants except the City of Cleveland, John Doe Officers, Officer Eckstein, and Officer Heffernan. Plaintiff's Equal Protection claim is dismissed against all defendants except the City of Cleveland and the John Doe officers. His Due Process claim is dismissed against all defendants except the City of Cleveland. Plaintiff's Fourth Amendment claim is dismissed against all defendants except Captain Heffernan, Officer Eckstein, and the John Doe officers. Plaintiff's claim under 42 U.S.C. §1981 is dismissed against all defendants except the City of Cleveland and the John Doe officers. Mr. Taylor's claims under 18 U.S.C. § 242, 42 U.S.C. § 1985, and Ohio Revised Code § 4112.02 are dismissed against all defendants. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2] The remaining claims shall proceed solely against the defendants as set forth above. Mr. Taylor

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

provided summonses for the City of Cleveland and Captain Heffernan. He has not provided Marshal Forms or summonses for Officer Eckstein or any of the John Doe defendants. The Clerk's Office is directed to forward the appropriate documents pertaining to the City of Cleveland and Captain Heffernan to the U.S. Marshal for service of process. Mr. Taylor is ordered to provide U.S. Marshal forms and summonses for John Doe Officers and Officer Eckstein within thirty (30) days of this order. Mr. Taylor is further ordered to send a "Notice of Compliance," with an appropriate case caption for filing, with the completed forms. The Clerk's Office is directed to mail sufficient marshal forms and summonses to Mr. Wise with a copy of this order.

    IT IS SO ORDERED.

                                                    DONALD C. NUGENT
                                                  UNITED STATES DISTRICT JUDGE

Dated: June 19, 2009